# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

GREGORY A. OLDING,                    )      CASE NO. 3:14-cv-01009
                                      )
          Plaintiff,              )
                                      )
        v.                          )      MAGISTRATE JUDGE
                                      )      VECCHIARELLI
                                      )
CAROLYN W. COLVIN,                    )
    Acting Commissioner of Social     )
    Security,                         )      **MEMORANDUM OPINION AND**
                                      )      **ORDER**
          Defendant.              )

Plaintiff, Gregory A. Olding ("Plaintiff"), challenges the final decision of

Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security

("Commissioner"), denying his applications for Period of Disability ("POD"), Disability

Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II

and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* ("Act"). This

case is before the undersigned United States Magistrate Judge pursuant to the consent

of the parties entered under the authority of 28 U.S.C. § 636(c)(2). For the reasons set

forth below, the Commissioner's final decision is AFFIRMED.

## I.    PROCEDURAL HISTORY

On March 14, 2011, Plaintiff filed his applications for POD, DIB, and SSI,

alleging a disability onset date of October 7, 2010.[1]  (Transcript ("Tr.") 20.)  The claims

---

[1]      Plaintiff previously applied for DIB and SSI in April 2008, alleging disability
beginning in August 2007.  (Tr. 81.)  Following a hearing, an ALJ issued a
decision on October 6, 2010, finding Plaintiff not disabled.  (Tr. 81-93.)
The Appeals Council dismissed Plaintiff's request for review on June 6,
2012, based on untimeliness of the filing.  (Tr. 145.)  As a result, the ALJ's
October 2010 decision was the Commissioner's final decision.  (*Id.*)

were denied initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law judge ("ALJ").  (*Id.*)  On November 14, 2012, an ALJ held Plaintiff's hearing.  (*Id.*)  Plaintiff participated in the hearing, was represented by counsel, and testified.  (*Id.*)  A vocational expert ("VE") also participated and testified.  (*Id.*)  On January 8, 2013, the ALJ found Plaintiff not disabled.  (Tr. 17.)  On March 18, 2014, the Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision.  (Tr. 1.)

On May 8, 2014, Plaintiff filed his complaint to challenge the Commissioner's final decision.  (Doc. No. 1.)  The parties have completed briefing in this case.  (Doc. Nos. 12, 13. 14.)

Plaintiff asserts the following assignments of error: (1) The ALJ erred by failing to consider new and material evidence; (2) the ALJ erred in evaluating Plaintiff's credibility; and (3) the ALJ erred in failing to require a medical expert to testify at Plaintiff's hearing.

## II.    EVIDENCE

### A.    Personal and Vocational Evidence

Plaintiff was born in February 1959 and was 51-years-old on the alleged disability onset date.  (Tr. 27.)  He had at least a high school education and was able to communicate in English.  (*Id.*)  He had past relevant work as an auto detailer.  (*Id.*)

### B.    Medical Evidence

#### 1.    Medical Reports

Plaintiff's medical records indicate that he was diagnosed with epilepsy.  (Tr.

2

326.)  On June 29, 2011, Michael D. Privitera, M.D., saw Plaintiff for his epilepsy.  (Tr. 408.)  Dr. Privitera noted that Plaintiff experienced simple partial seizures that lasted six seconds, caused speech arrest, and only happened in the morning.  (*Id.*)  He noted that Plaintiff's seizures had been "somewhat better," and that Plaintiff was exercising more and getting better sleep.  (*Id.*)

In March 2012, Plaintiff reported to James Relchert, D.O, that he was experiencing some malaise and fatigue.  (Tr. 427.)  A neurologic examination showed that Plaintiff was alert and oriented in all spheres, with no memory impairment.  (Tr. 428.)  He had full muscle strength and tone in all extremities.  (*Id.*)  In June 2012, Plaintiff reported no episodes of feeling down, depressed, or hopeless.  (Tr. 437.)  He also denied being bothered by a loss of interest or pleasure in doing things.  (*Id.*)  Treatment notes indicate that Plaintiff "took himself off Fosamax because he went over 2 years, thinks it was triggering seizures.  Now seizure[s] are better and better memory."  (Tr. 439.)

In September 2012, Babatunde Onamusi, M.D., conducted an internal medicine examination.  (Tr. 445-446.)  Dr. Onamusi noted that Plaintiff walked with a normal gait, had no trouble transferring onto or off the examination table, and did not require an assistive device for ambulation or transfer.  (Tr. 445-446.)  Dr. Onamusi noted that Plaintiff was able to squat, kneel, walk in tandem, stand on heels and toes, and grip and grasp with both hands.  (Tr. 446.)  Plaintiff's grip strength in the right hand was 90 pounds and 105 pounds in the left hand; and he was able to reach forward, push, or pull with the upper extremities.  (*Id.*)  Plaintiff was able to use his hands for fine coordination and manipulative tasks; he was able to tie knots, buttons, tie shoelaces,

3

pick up coins, hold pens, turn door handles, pull zippers, and perform fine fingering movements.  (*Id.*)  Dr. Onamusi opined that Plaintiff was capable of working but should avoid safety-sensitive jobs that could increase the risk of injury to Plaintiff or others if seizure activity was to occur on the job.  (*Id.*)

On October 31, 2012, Dr. Peter White completed a seizure questionnaire on behalf of Plaintiff.  (Tr. 460-461.)  Dr. White reported that Plaintiff had the following symptoms related to the severity of his epilepsy: minor motor seizures (petit mal, psychomotor, or focal) documented by an electroencephalogram (EEG) and by detailed description of atypical seizure pattern, including all associated phenomena; alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.  (Tr. 460.) Dr. White concluded that Plaintiff's impairment was expected to last at least 12 months.  (*Id.*)  He reported that Plaintiff did not have seizures more frequently than once per week.  (*Id.*)

## 2.  Agency Reports

On May 20, 2008, Michael J. Wuebker, Ph.D., conducted a consultative psychological examination of Plaintiff.  (Tr. 313.)  Dr. Wuebker noted that Plaintiff appeared to be operating in the average range of intelligence and his insight and ability to make sound judgments seemed intact.  (Tr. 315.)  Plaintiff reported that he exercised, visited with his family and his girlfriend, enjoyed playing basketball and golfing, and was able to cook, clean, and shop.  (Tr. 315-315.)  Dr. Wuebker assigned

4

Plaintiff a Global Assessment of Functioning (GAF) score of 70.[2]  (Tr. 316.) Dr.

Wuebker opined that Plaintiff's mental ability to relate to others, including fellow workers

and supervisors, was unimpaired; his mental ability to understand, remember, and

follow simple instructions in a work environment was mildly impaired; his mental ability

to maintain attention, concentration, persistence, and pace to perform simple repetitive

tasks in a work environment was mildly impaired; and his mental ability to withstand the

stress and pressures associated with day-to-day simple work activity was mildly

impaired.  (Tr. 316-317.)

In April 2011, state reviewing psychologist Paul Tangeman, Ph.D., reviewed

Plaintiff's medical records and opined that Plaintiff had mild restrictions in activities of

daily living; no difficulties in maintaining social functioning; mild difficulties in maintaining

concentration, persistence, or pace; and no episodes of decompensation.  (Tr. 103.)

Dr. Tangeman concluded that Plaintiff did not have a severe mental impairment.  (*Id.*)

Dr. Tangeman indicated that he adopted the findings of the first ALJ who denied

Plaintiff's disability claim on October 6, 2010.  (*Id.*)  In May 2011, state reviewing

psychologist Robyn Hoffman, Ph.D., reviewed the medical evidence and affirmed Dr.

Tangeman's assessment.  (Tr. 126.)  Dr. Hoffman noted that she adopted the first

ALJ's findings, as Plaintiff did not allege any worsening condition or updated treatment

history on reconsideration.  (*Id.*)

---

[2]     The GAF scale incorporates an individual's psychological, social, and
occupational functioning on a hypothetical continuum of mental health
illness  devised by the American Psychiatric Association.  A GAF score
between 61 and 70 indicates some mild symptoms or some difficulty in
social, occupational, or school functioning.

In April 2011, state reviewing physician Gary Hinzman, M.D., opined that Plaintiff could occasionally lift or carry 50 pounds; frequently lift or carry 25 pounds; stand or walk for up to six hours in an eight-hour day; and sit for more than six hours in an eight-hour day.  (Tr. 104-105.)  He further opined that Plaintiff should never climb ladders, ropes, or scaffolds and should avoid all exposure to hazards due to his epilepsy.  (Tr. 105.)  On May 5, 2011, Linda Hall, M.D., affirmed Dr. Hinzman's findings.  (Tr. 128-129.)

## C.    Hearing Testimony

### 1.    Plaintiff's Hearing Testimony

Plaintiff testified that his epilepsy began when he was 14-years-old.  (Tr. 39.)  He stated that he had an insurance plan through the government to obtain medications. (Tr. 38.)  Plaintiff denied having convulsive seizures.  (Tr. 44.)  He testified that he took Felbatol, Dilantin, Lamictal, and Topomax, and he denied experiencing side effects from his medications.  (Tr. 52.)  He had a driver's license and was able to drive to a store down the block from his home.  (Tr. 48.)

When the ALJ asked Plaintiff what has changed since the last time he appeared before an ALJ, Plaintiff responded: "As, as far as my physical change, I, physically, I don't feel I'm changed a whole lot really, Your Honor."  (Tr. 45.)  Plaintiff further stated that since his last hearing, he has experienced some side effects from his medications, including receding gums, weight loss, and "bone loss."  (Tr. 45-46.)  Later in his testimony, Plaintiff testified that he took his medications as prescribed and did not experience any side effects from the medications.  (Tr. 52.)

6

Plaintiff stated that he did not have any problems sitting or standing.  (Tr. 52-53.)  He walked his dog daily for exercise.  (Tr. 53.)  Plaintiff testified that he could lift about 50 pounds and that he did not have any trouble using his hands or fingers.  (*Id.*)  Plaintiff could cook, shop, wash dishes, do laundry, and complete other household chores.  (Tr. 54.)  He did not have any difficulty dressing, showering, using a phone or a computer, or watching television.  (*Id.*)  Plaintiff enjoyed reading , golfing, and riding his bike.  (Tr. 56.)

### 2. Vocational Expert's Hearing Testimony

Sharon Ringenberg, a vocational expert, testified at Plaintiff's hearing.  The ALJ asked the VE to assume a hypothetical individual of Plaintiff's age, education, and work experience who is able to perform a range of medium work except that the individual could never drive, work from heights, or operate machinery that would be dangerous to himself or fellow co-workers if he were to have even a brief loss of consciousness.  (Tr. 63.)  The VE testified that the individual could perform Plaintiff's past work as a night janitor and an auto detailer, as the jobs are performed in the national economy and as Plaintiff performed them.  (*Id.*)  The VE testified that Plaintiff could also perform work as a grocery bagger, a dishwasher, and a laundry worker.  (Tr. 63-64.)

### III. STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when he establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524 (6th Cir. 1981).*  A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a).

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits. 20 C.F.R. §§ 404.1520(b) *and* 416.920(b). Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) *and* 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) *and* 416.920(d). Fourth, if the claimant's impairment does not prevent him from doing his past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

8

## IV.    SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2.    The claimant has not engaged in substantial gainful activity since October 7, 2010, the alleged onset date.

3.    The claimant has the following severe impairment: epilepsy.

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except the claimant: can never drive; and can never work from heights or operate machinery that would be dangerous to himself or fellow co-workers if he were to have even a brief loss of consciousness.

6.    The claimant is capable of performing past relevant work as an auto detailer.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7.    The claimant has not been under a disability, as defined in the Social Security Act, from October 7, 2010, through the date of this decision.

(Tr. 22-29.)

## V.    LAW & ANALYSIS

### A.    Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards.  *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010).  Review must be based on the record as a whole.  *Heston v. Comm'r of*

9

*Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

      **B.**     **Plaintiff's Assignments of Error**

           **1.**     **The ALJ Erred by Failing to Consider New and Material Evidence.**

Plaintiff argues that ALJ Harry E. Siegrist (the "ALJ") erred in failing to consider new and material evidence of impairments that Plaintiff alleges did not exist when ALJ Timothy G. Keller (the "first ALJ") found Plaintiff not disabled in October 2010. Specifically, Plaintiff maintains that the record contains new and material evidence of osteoporosis, osteopenia, and extreme fatigue/malaise, and that the ALJ erred by failing to consider this evidence when determining Plaintiff's severe impairments at Step

Two of the sequential evaluation process.  For the following reasons, Plaintiff's argument is without merit.

Absent substantial evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ.  *See Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842-843 (6th Cir. 2004).  Social Security Acquiescence Ruling 98-4(6) reflects this holding.  *See* AR 98-4(6), 1998 WL 283902.  In his decision, the ALJ specifically acknowledges the holding of *Drummond* as well as the impact of Acquiescence Ruling 98-4(6).  (Tr. 23-24.)  The ALJ explains:

> In accordance with Acquiescence Ruling 98-4(6), adjudicators must adopt a finding required at a step in the sequential evaluation process and made by an Administrative Law Judge or the Appeals Council in a final decision on a prior claim, unless there is new and material evidence relating to such a finding or there has been a change in the law.  Therefore, unless there is new and material evidence or a showing of "changed circumstances" relating to a determination of the present claim, I am bound by the previous findings and determinations, including any findings of fact which are relevant to the claimant's residual functional capacity.  Furthermore, new evidence will be considered material only if it both differs from that presented in the prior claim and warrants a finding different than that made in the decision on the prior claim.

(*Id.*)

Here, Plaintiff maintains that his condition worsened after the first ALJ rendered his decision because: (1) Two dual-energy x-ray absorptiometry (DEXA) bone scans, one from July 2010 and one from July 2011, showed osteoporosis and osteopenia (tr. 339, 415); and (2) Plaintiff experienced significant malaise and fatigue as a side effect from his epilepsy and anti-epileptic medications (tr. 334, 413, 427, 430).  In his decision, however, the ALJ thoroughly reviewed the medical evidence post-dating the

first ALJ's decision and found that there was no new and material evidence showing "changed circumstances."   (Tr. 24-27.)  The ALJ specifically noted that "in March 2012, the claimant did report symptoms of malaise and fatigue." (Tr. 25.)  Despite Plaintiff's complaint of malaise and fatigue, the ALJ determined that Plaintiff would be capable of performing a limited range of medium work.

Furthermore, Plaintiff maintains that the results of his 2010 and 2011 DEXA bone scans showed osteoporosis and osteopenia, and that the ALJ erred by failing to find that Plaintiff had the severe impairments of osteoporosis and osteopenia.  While the DEXA bone scans indicated that Plaintiff had mild osteopenia and osteoporosis, Plaintiff has presented no evidence that supports significant limitations from his bone condition.  Indeed, other than pointing to two instances in the record showing impressions of osteopenia and osteoporosis, Plaintiff fails to show that those conditions were severe or that they had any effect on his physical residual functional capacity.  It is well established that the "mere diagnosis" of a condition "says nothing" about its severity, or its effect on a claimant's ability to perform work.  *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988).

In determining whether Plaintiff's condition changed since the first ALJ rendered his decision, the ALJ also considered Plaintiff's hearing testimony.  The ALJ noted that Plaintiff testified that since the first ALJ rendered his decision, the only changes in Plaintiff's condition have been receding gums.  (Tr. 24.)  The ALJ also noted Plaintiff's testimony that he took his Dilantin as prescribed and had very few side effects.  (*Id.*)  Indeed, the transcript of Plaintiff's hearing indicates that Plaintiff testified that he took his medications as prescribed and did not experience any side effects from the

12

medications.[3]  (Tr. 52.)  Furthermore, the ALJ noted that in his Adult Disability Report, Plaintiff alleged disability due to epilepsy, kidney problems, and difficulty concentrating. (Tr. 24.)  As Plaintiff has failed to show that the evidence post-dating the first ALJ's 2010 decision supports the presence of additional severe impairments beyond those found by the ALJ, Plaintiff's first assignment of error is without merit.

## 2.    The ALJ Erred in Evaluating Plaintiff's Credibility.

Plaintiff argues that the ALJ erred in evaluating his credibility, because the ALJ improperly found that Plaintiff was noncompliant with his epilepsy medications. Plaintiff's argument is not well taken.  As the Commissioner correctly notes in her Brief, the ALJ did not find that Plaintiff was less than fully credible due to noncompliance with his medications. Rather, the ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his alleged symptoms were not entirely credible because Plaintiff described daily activities that were inconsistent with complaints of disabling symptoms and limitations.  (Tr. 26.)  The ALJ acknowledged Plaintiff's testimony that on a typical day, he "gets up and lets his dog out, he takes his medications, makes breakfast, shops, does the laundry, watches television, and reads the paper every day."  (Tr. 24-25.)  Plaintiff also noted that he enjoyed golfing and riding his bicycle.  (Tr. 25.)  The ALJ further explained that he found Plaintiff less than fully credible because the record revealed that his allegedly disabling impairment was

---

[3]    Earlier in his testimony, Plaintiff stated that since his last hearing, he has experienced some side effects from his medications, including receding gums, weight loss, and "bone loss."  (Tr. 45-46.)  Later in his testimony, Plaintiff testified that he took his medications as prescribed and did not experience any side effects from the medications.  (Tr. 52.)

13

present at approximately the same level of severity prior to the alleged onset date, and therefore the fact that the impairment did not prevent Plaintiff from working at that time "strongly suggests that it would not currently prevent work." (Tr. 26.)

While the ALJ discussed Plaintiff's use of medications in assessing his credibility, the ALJ does not appear to have found that Plaintiff failed to take his medications as prescribed, as Plaintiff suggests in his Brief on the Merits.  In fact, the ALJ found that Plaintiff's epilepsy is "well controlled with medication," as the record reveals that the treatment Plaintiff has received for his allegedly disabling symptoms "has been generally successful in controlling those symptoms." (Tr. 26.)  In a paragraph following the ALJ's discussion of Plaintiff's credibility, the ALJ acknowledges Social Security Ruling 87-6, which the ALJ notes "is being revised to clarify that when epileptic seizures are occurring at the frequency specified in the criteria of the epilepsy listings, current evidence showing blood drug levels is necessary before a favorable decision can be made." (Tr. 27.)  The ALJ explained that "[s]ituations where the seizures are not under good control are usually due to the individual's noncompliance with the prescribed treatment rather than the ineffectiveness of the treatment itself." (*Id.*)  In the paragraph discussing SSR 87-6, however, the ALJ makes no reference to the frequency of Plaintiff's seizures or the need to assess Plaintiff's blood levels of anticonvulsive drugs to determine whether prescribed medications are being taken, nor does the ALJ express any concern that Plaintiff has been non-compliant with his medication regimen.  Given that in the previous paragraph the ALJ noted that Plaintiff's medications were successful in controlling his symptoms, it is unreasonable to interpret the ALJ's subsequent discussion of SSR 87-6 to mean that the ALJ considered Plaintiff

14

to be noncompliant with his medications.  For these reasons, the ALJ did not err in

assessing Plaintiff's credibility, and Plaintiff's second assignment of error is without

merit.

> **3.    The ALJ Erred in Failing to Require a Medical Expert to Testify at Plaintiff's Hearing.**

Plaintiff argues that the ALJ erred by failing to have a medical expert testify at his

administrative hearing.  Specifically, Plaintiff maintains that a medical expert should

have been present to evaluate Plaintiff's side effects from his prescription medications

on his ability to work.  Plaintiff argues that "[b]y not having a medical expert, the ALJ

made a medical determination, despite his lack of training[,] expertise, and licensing as

a medical professional."  (Plaintiff's Brief ("Pl.'s Br.") 7.)   The Commissioner responds

that a medical expert was not necessary in this case, because "the ALJ had more than

enough evidence to reasonably determine that Plaintiff was not disabled," including the

opinions of two state reviewing physicians and a consultative examiner's opinion.  For

the following reasons, Plaintiff's argument is not well taken.

The need for a medical expert is within the discretion of the ALJ.  *See* 20 C.F.R.

404.1527(f)(2)(iii) ("Administrative law judges may . . . ask for and consider opinions

from medical experts. . . .").  Here, the ALJ specifically questioned Plaintiff about the

side effects of his medications on two occasions during Plaintiff's hearing.  Plaintiff first

stated that since his last hearing, he has experienced some side effects from his

medications, including receding gums, weight loss, and "bone loss."  (Tr. 45-46.)  Later

in his testimony, Plaintiff testified that he took his medications as prescribed and did not

experience any side effects from them.  (Tr. 52.)  Given that Plaintiff specifically testified

that he experienced no side effects from his medications (tr. 52), and in light of his testimony that he did not feel his physical condition changed since his first hearing (tr. 45), it was reasonable for the ALJ not to require a medical expert to testify regarding the side effects of Plaintiff's medications.

Moreover, as the Commissioner notes in her Brief on the Merits, the record contains numerous opinions from medical experts who rendered opinions regarding Plaintiff's condition following the first ALJ's decision in October 2010. In his decision, the ALJ assessed and assigned weight to the following opinions rendered after October 2010: Dr. Onamusi's consultative internal medicine examination from September 2012; Dr. White's seizure questionnaire from October 2012; Dr. Privitera's treatment notes from June 2011, March 2012, and August 2012; state agency physician Dr. Tangeman's opinion from April 2011; state agency physician Dr. Hoffman's opinion from May 2011; state agency physician Dr. Hinzman's opinion from April 2011; and state agency physician Dr. Hall's opinion from May 2011. (Tr. 25-26.) Given the extensive medical reports in the record and the ALJ's reliance on those reports to assess Plaintiff's abilities and limitations, the ALJ was within his discretion in deciding that medical expert testimony was not necessary. Accordingly, Plaintiff's third assignment of error does not present a basis for remand of his case.

## VI.    CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

**IT IS SO ORDERED**.

s/ *Nancy A. Vecchiarelli*
U.S. Magistrate Judge

Date: April 30, 2015

16